**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOYCE W. MCCLELLAN, | CASE NO. 1:15-CV-00723 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Joyce W. McClellan ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("Act").  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

## I. PROCEDURAL HISTORY

On December 13, 2011, Plaintiff filed her applications for SSI, alleging a disability onset date of October 1, 2008.  (Transcript ("Tr.") 11.)  The claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id*.)  On August 9, 2013, an ALJ held Plaintiff's hearing.  (*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.  (*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id*.)  On

December 23, 2013, the ALJ found Plaintiff not disabled. (Tr. 21.) On February 16, 2015, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.)

On April 14, 2015, Plaintiff filed her complaint challenging the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 14, 16.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred in her assessment of Plaintiff's residual functional capacity; and (2) the ALJ erred by failing to grant appropriate weight to the opinions of the treating physicians. (Doc. No. 14.)

## II.   EVIDENCE[1]

### A.   Personal and Vocational Evidence

Plaintiff was born in October 1963 and was 45-years-old on the alleged disability onset date. (Tr. 19.) She had a limited education and was able to communicate in English. (*Id.*) She had past relevant work as a cleaner. (*Id.*)

### B.   Hearing Testimony

#### 1.   Plaintiff's Hearing Testimony

At her August 9, 2013 hearing, McClellan testified as follows:

- She lives with her brother and 14 year-old son. She has a driver's license, but does not drive much. (Tr. 30.) She relies on her mother to drive her places. (Tr. 36-37.) She does not remember if she had to take a written test to obtain her license. (Tr. 37.)

- She has a ninth grade education. (Tr. 30-31.) She tried to obtain her GED but suffers from Attention Deficit Hyperactivity Disorder ("ADHD")

---

[1] As Plaintiff's assignments of error present only limited issues for review, the Court discusses the relevant medical evidence in its analysis below.

2

and reads only at a third grade level.  (Tr. 31.)  She was in special classes her entire life.  She cannot read a menu or a newspaper headline, and the names of individuals in her cell phone are abbreviated to initials.  (Tr. 32-33.)

- She used to smoke illegal substances years ago, and did not drink alcohol.  (Tr. 33.)

- She purchases primarily pre-prepared meals.  She does not wash dishes or go grocery shopping, but helps her son with the laundry.  (Tr. 33-34.)  She is able to perform personal hygiene without difficulty.  She has no hobbies.  (Tr. 34.)

- Her medication makes her groggy.  (Tr. 34-35.)  She takes seventeen (17) different medications, including Percocet for pain.  (Tr. 40.)  The side effects include nausea, constipation, bloating, and weight gain.  (Tr. 41.)  She has attempted physical therapy, but it causes her too much pain.  (Tr. 35.)  She has also been prescribed a TENS unit, but her pain is unremitting.  (Tr. 41.)

- She gets up at 5 a.m. in the morning to see her son off to school.  (Tr. 35.)  She has trouble sleeping due to pain and has a CPAP machine to help with her sleep apnea.  (Tr. 36.)  Despite taking sleeping pills and using the CPAP machine, she still wakes up at night.  (Tr. 47-48.)

- She receives Toradol injections for her pain every two weeks.  (Tr. 36, 48-49.)  She receives nerve blocks every three months.  In May of 2012, she underwent a rhizotomy which involves burning the nerves.  (Tr. 49.)

- She received social security as a child.  (Tr. 37.)

- She worked part-time as a cleaner for four or five years, but was injured at work when a dumpster door hit her in the back.  (Tr. 37-38.)  Her last job was with the Salvation Army in 2008.  (Tr. 37.)

- She has sharp pain in her legs, she wakes up with bruises of unknown origin on her legs, and the toes on her right foot separated.  She has difficulty walking and wobbles when she does so.  (Tr. 39.)

- She had been seeing a counselor, therapist, or psychiatrist until he quit.  (Tr. 42-43.)

- She was unsure how much weight she could lift or carry.  She can stand for 30 to 40 minutes before needing to sit down.  (Tr. 44.)

3

- She is left-handed, drop things, and can sometimes open jars or bottles. She can eat with utensils. (Tr. 45.) She could bend slowly and crawl slowly. (Tr. 46.)

- She has no problems being around people. She is forgetful and mixes up her medical appointments. (Tr. 46.) She uses two pill boxes to keep track of her medications. (Tr. 47.)

- Five of her seven siblings have "died from some kind of leg pain, heart attack." (Tr. 39.)

- She has been diagnosed with degenerative disk disease and spondylosis. (Tr. 51.)

### 2.     Vocational Expert's Hearing Testimony

The VE classified Plaintiff's past work as a cleaner, Dictionary of Occupational Titles ("DOT") No. 323.687-018, light exertional, with an SVP of 2. (Tr. 54.) The job did not result in any transferable skills. (*Id*.) The ALJ posed the following hypothetical question to the VE:

> Assuming we had a hypothetical person, who could lift and carry 20 pounds occasionally, 10 pounds frequently, this person could -- this person is going to be able to stand and walk for six hours and sit for six with normal breaks. This person would occasionally climb stairs and ramps, bend, balance, stoop, kneel and crawl.
>
> This person could frequently reach in all directions and could frequently handle, finger and feel. This person would avoid hazardous conditions and would perform simple, routine tasks with simple, short instructions; make simple decision [sic], have few workplace changes. This person should not be required to -- as a function of the job, they wouldn't be required to prepare reports.
>
> They would not be required to have to read instructions, so that if they were learning something, they would learn it by demonstration.

(Tr. 54-55.)

The VE testified that such an individual would not be able to perform Plaintiff's past relevant work, because of the limitation to only occasional bending. (Tr. 55.)

4

However, the VE identified the following jobs that the hypothetical individual could perform:  assembler, small products – DOT No. 706.684-022, light exertional level, unskilled with SVP of 2 (4,000 jobs statewide and 600,000 nationally); inspection worker – DOT No. 559.687- 074, light, unskilled with SVP of 2 (3,000 jobs statewide and 300,000 nationally); and, bench assembler – DOT No. 754.648-018, light, unskilled (2,000 jobs statewide and 450,000 nationally).[2]  (Tr. 55-56.)

When asked by the ALJ, the VE testified that an individual who missed work at least three times a month would be unable to maintain competitive employment over time.  (Tr. 56-57.)  Similarly, the VE testified that an individual who requires a 15-minute break every two hours could perform the jobs identified, but would have difficulty maintaining competitive employment over time.  (Tr. 57-58.)

The VE affirmed that her testimony was consistent with the DOT, but noted that her testimony regarding absenteeism was not based on the DOT but on her experience. (Tr. 58.)

Finally, the ALJ inquired how the VE would categorize an individual who could perform the lifting/carrying requirements of light work but was limited to only two hours of standing/walking in an eight-hour workday but could sit for six.  (Tr. 58.)  The VE stated that it would be considered sedentary.  (Tr. 59.)

In response to a question from Plaintiff's counsel, the VE testified that if the person in the first hypothetical "needs a sit/stand at-will option, and that when they're

---

[2]  The VE retracted her earlier testimony that the hypothetical person could perform the job of a dish washer.  (Tr. 56.)  She also identified sorter as a sedentary position that the hypothetical individual could perform.  (*Id*.)

standing, they [need to use a] cane," such a person would be competitively unemployable. (Tr. 59.) The VE noted that such a requirement would place the individual in the sedentary category. (*Id*.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. § 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §

416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. § 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. § 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 13, 2011, the application date (20 CFR 416.971 et seq.) (Exhibits 2D, 4D, SD, 3E, and 1F and Hearing Testimony).

2. The claimant has the following severe impairments: Degenerative disc disease, obesity, major depression, and anxiety (20 CFR 416.920(c).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) and meaning that the claimant can lift/carry 20 pounds occasionally, 10 pounds frequently, stand/walk 6 hours, and sit for 6 hours with normal breaks, occasionally climb stairs and ramps, bend, balance, stoop, kneel, and crawl, frequently reach in all directions, frequently handle, finger, and feel, would avoid all hazardous conditions, perform simple, routine tasks with simple, short instructions, make simple decisions, have few work place changes, and should not be required as functions of the job to prepare reports or read instructions, as to learn a task she would learn it by demonstration.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on October 21, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the date the

7

application was filed. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since December 13, 2011, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-20.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. Treating Physician Rule

In her second assignment of error, Plaintiff avers that the ALJ erred in her evaluation of the weight assigned to two of her treating physicians – Rodney B. Delaney, Ph. D., and Christopher Gillespie, M.D. (Doc. No. 14 at 15.) The Commissioner argues that the ALJ set forth good reasons for rejecting these opinions. (Doc. No. 16 at pp. 14-21.)

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given

9

to the treating physician's opinion and the reasons for that weight.  *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)).  This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

"The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), citing *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985).  Furthermore, it is well-established that administrative law judges may not make medical judgments.  *See Meece v. Barnhart,* 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).  Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); see also *Winning v. Comm'r of Soc. Sec.*, 661 F. Supp.2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not

10

have the expertise to make medical judgments.'") (O'Malley, J.)

Specifically, Plaintiff takes issue with the ALJ's treatment of Dr. Delaney and Dr. Gillespie's opinions rendered on May of 2013 and June of 2013 respectively. (Doc. No. 14 at pp. 15-16.)

On May 17, 2013, Dr. Delaney completed a Medical Source Statement concerning Plaintiff's mental capacity. (Tr. 724-25.) The form consists of 22 categories of mental functioning capabilities, which the medical provider was asked to rate as either constant, frequent, occasional or rare.[3] Dr. Delaney found Plaintiff could only rarely perform the mental activities described in 14 of the 22 categories, occasionally perform 7 of the 22, and frequently perform one (the use of judgment). (Tr. 724-25.) Dr. Delaney indicated that these limitations were based on Plaintiff's diagnoses of depression and anxiety, but offered no further elaboration.[4] (Tr. 725.)

On June 11, 2013, Dr. Gillespie completed a Medical Source Statement concerning Plaintiff's physical capacity. (Tr. 726-27.) In material part, Dr. Gillespie opined that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently – the only imitation that was incorporated into the RFC. (Tr. 726.) Dr. Gillespie further

---

[3] "Constant" was defined as an unlimited ability to perform the activity; "frequent" as the ability to perform the activity for up to 2/3 or a workday; "occasional" as the ability to perform the activity for up to 1/3 or a workday; and, "rare" as an inability to perform the activity in question for "any appreciable time." (Tr. 724.)

[4] With respect to non-exertional limitations, the RFC limited Plaintiff to "simple, routine tasks with simple, short instructions, [to] mak[ing] simple decisions, [and to] ... few work place changes." (Tr. 16.) Without reciting all 22 categories, the RFC plainly did not incorporate Dr. Delaney's assessed limitations. By way of example, Dr. Delaney indicated Plaintiff could only rarely understand, remember and carry out simple job instructions. (Tr. 724.) As another example, Dr. Delaney also limited Plaintiff to only occasional interaction with supervisors, co-workers, and the public. (Tr. 724.) The RFC contains no limits with respect to social interaction.

opined that Plaintiff could do the following: (1) stand/walk for 2 hours and sit for 2 hours in an 8-hour workday (each for 30 minutes without interruption); and (2) rarely climb, balance, stoop, kneel, crouch, and crawl; occasionally reach, push/pull, and perform fine or gross manipulation.  (Tr. 726-27.)  He noted that Plaintiff had been prescribed a cane, would need to alternate between sitting and standing/walking and suffered from severe pain.  (Tr. 727.)  The latter would interfere with concentration, take Plaintiff off task, and cause absenteeism.  (*Id*.)  Finally, Dr. Gillespie indicated that Plaintiff would need two additional breaks on top of those normally permitted during an 8-hour workday.  (*Id*.)  The only explanation offered in support of the assessments is a notation that an MRI of Plaintiff's spine shows degenerative disc disease.  (Tr. 726-27.)

>The ALJ addressed Dr. Delaney's opinion as follows:

>A treating counselor, Rodney B. Delaney, Ph.D., opined that the claimant mostly has rare-to- occasional abilities in making occupational adjustments, intellectual functioning, and making personal and social adjustment (5/17/2013, Exhibit 11F).  The undersigned assigns little weight to this opinion.  Even though it is from a treating source, it is inconsistent with his repeated notations that her symptoms have been in partial remission (Exhibit 7F, Pages 11 and 36).

(Tr. 19.)

The ALJ acknowledged that Dr. Delaney is a treating source, and the Commissioner's brief does not challenge that his opinion is subject to the rigors of the treating physician rule.  (Doc. No. 16 at pp. 17-19.)  The ALJ essentially offered one, singular reason for rejecting this opinion – notations in the record from Dr. Delaney that stated "symptoms in partial remission."[5]  (Tr. 19, *citing* Exh. 7F, Tr. 430, 455.)  The

---

[5]  Dr. Delaney made such observations on August 15, 2012, August 29, 2012, October 15, 2012, November 12, 2012, December 3, 2012, and May 17, 2013.  (Tr. 430, 455,

12

Commissioner's brief on this point consists largely of citations to Dr. Delaney's treatment notes which, she avers, show largely normal findings. (Doc. No. 16 at pp. 18-19.) While the Commissioner's argument is not entirely unpersuasive, "courts may not accept appellate counsel's *post hoc* rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, at \*6 (6th Cir. Sept. 16, 1993) (unpublished opinion) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citation omitted)). Further, even if the record supports the Commissioner's arguments, "a court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. '[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway.'" *Wilson*, 378 F.3d at 546 (quoting *Mazaleski v. Treusdell*, 562 F.2d 701, 719, n.41 (D.C. Cir. 1987)). The only reason actually offered by the ALJ for rejecting Dr. Delaney's opinion is the ALJ's apparent belief that the functional limitations assessed cannot be as severe as Dr. Delaney suggests if Plaintiff's symptoms are in partial remission. This statement, without a more detailed discussion of Dr. Delaney's treatment, is insufficient. It is not enough for the ALJ to simply to cite the relevant exhibits generally, leaving the Court or defense counsel to fill in the factual gaps in the ALJ's conclusion. Therefore, the Court finds the ALJ failed to set forth good reasons

---

665, 679, 700, 872.)

for rejecting the opinion of Dr. Delaney, and a remand is required.

With respect to Dr. Gillespie, the ALJ found as follows:

> The following year, Dr. Gillespie opined that the claimant can lift/carry 10 pounds frequently and 20 pounds occasionally, stand/walk for 2 hours and sit for 2 hours in an 8-hour day, has postural limitations, and has "severe" pain and depression that interferes with work attendance, concentration, and staying on task (6/11/2013, Exhibit 12F).  The undersigned  assigns some weight to this opinion, as it is from an acceptable treating source and he noted the results of an MRI that showed degenerative disc disease as support for his opinion.  However, he did not include any other notations or records to support the rest of his opinion.  Moreover, the opinion is not consistent with her taking a Zumba class and the physical therapist's notation that she has good strength in her lower extremities.

(Tr. 18-19.)

As the Court has already determined that a remand is necessary, it is unnecessary to decide whether the ALJ gave sufficient reasons for rejecting Dr. Gillespie's opinion.[6]  However, pursuant to 20 C.F.R. § 416.927(C), "Supportability" is one of the factors specifically set forth in the regulation, which states that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion."  Dr. Gillespie's June 2013 opinion gives scant explanation as to what signs or findings support the severe limitations assessed, and the ALJ appropriately noted that, save for an MRI revealing degenerative disc disease, the opinion "did not include any other notations or records to support the rest of his opinion."  (Tr. 19.)  Nevertheless, the

---

[6]  Though the ALJ purports to assign "some weight" to this opinion, only the lifting/carrying restrictions assessed by Dr. Gillespie appear to have been incorporated into the RFC.  (Tr. 15-16, 19, 726-27.)

14

Court strongly encourages the ALJ, on remand, to give a more thorough explanation as to the weight it accorded Dr. Gillespie's opinion.[7]

### 2. RFC Finding

Plaintiff's other assignment of error challenges the ALJ's finding that she is capable of performing light exertional work.  (Doc. No. 14 at pp. 13-15.)  Plaintiff further argues that, had she been limited to sedentary work, the Medical-Vocational guidelines, specifically 201.10 or 201.12, would have compelled a finding of disabled as of her 50th birthday.  (*Id*.)

RFC is an indication of a claimant's work-related abilities despite his limitations. *See* 20 C.F.R. § 416.945(a).  A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner.  *See* 20 C.F.R. § 416.945(e).  As such, the ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, 20 C.F.R. § 416.945(a), and must consider all of a claimant's medically determinable impairments, both individually and in combination, S.S.R. 96-8p.  While RFC is for the ALJ to determine, it is well established that the claimant bears the burden of establishing the impairments that determine his RFC.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled],

---

[7] The ALJ did not discuss, for example, Dr. Gillespie's statement that Plaintiff needed a cane or a sit/stand option.  Earlier in the decision, the ALJ seemed to question whether Plaintiff needed a cane, because she admitted to only using one "sometimes" and because a May 2012 record indicates Plaintiff had no difficulty ambulating.  (Tr. 17.)

when the claimant is proving the extent of his impairments.")

As a remand is necessary, Plaintiff's assignment of error may be rendered moot as the RFC could change if the ALJ modifies the weight ascribed to either Dr. Gillespie or Dr. Delaney's opinions. Plaintiff's argument is largely predicated upon Dr. Gillespie's opinion that she was prescribed a cane, the use of which the ALJ questioned. (Tr. 17.) Because the RFC determination could change after remand, the Court declines to address this assignment of error.

## VI. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>
U.S. Magistrate Judge

Date: April 1, 2016